**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Douglas Wayne Derello, Jr., | No. CV 17-01266-PHX-DGC (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| Unknown Jackson, et al., | |
| Defendants. | |

Plaintiff Douglas Wayne Derello, Jr., who is currently confined in the Arizona State Prison Complex (ASPC)-Florence, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant Jackson moves for summary judgment, and Plaintiff opposes.[1] (Docs. 80, 85−87.) Also before the Court is Plaintiff's Motion for Reconsideration. (Doc. 93.) The Court will deny Plaintiff's Motion for Reconsideration, grant Defendant Jackson's Motion for Summary Judgment, and terminate the action.

**I.      Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment deliberate indifference claim against Defendants Jackson and Olsen and directed them to answer. (Doc. 6.) The Court dismissed the remaining claims and Defendants. (*Id*.) Defendant Olson was subsequently dismissed from the action without prejudice. (Doc. 76.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 82.)

Plaintiff's claim stems from an August 2016 assault on him by another inmate while he was assigned to the Special Management Unit (SMU) of ASPC-Eyman in Florence, Arizona.  (Doc. 1 at 3−4.)  In relevant part, Plaintiff makes the following allegations against Corrections Officer (CO) Jackson:

The housing pod Plaintiff was assigned to contained "alot [sic] of mental health/SMI [serious mental illness] inmates."  (*Id.*)  Plaintiff does not have "mental issues" and has not "taken any mental medication."  (*Id*.)  On or about June 20, 2016, Plaintiff was moved to a new pod that contained "even more mental issued [sic] inmates" including "Brian," the inmate who assaulted Plaintiff.  (*Id*. at 4.)  On some unspecified date, Brian "boiled hot water and thr[e]w [it] on another inmate," but was not reprimanded by the staff.  (*Id.*)

In July 2016, Brian accused Plaintiff of thinking he (Plaintiff) was better than the other inmates because Plaintiff did not take psychiatric medications.  (*Id*.)  Brian also stated that one of the officers told him that Plaintiff had been whining about being housed near mentally ill inmates.  (*Id.*)

At some point, Plaintiff complained to Sergeant Olson that Brian had threatened Plaintiff's life, made "racial remarks" towards him, and threated the staff that "they better move [Plaintiff's] ass out of the pod."  (*Id*. at 4–5.)  Olson responded, "All you nuts better go to sleep [or] I'm going to spray all of you[,] and walked out of the pod.  (*Id*. at 5.)

On August 16, 2016, Plaintiff was assaulted by Brian while Defendant Jackson was escorting five maximum security inmates, including Plaintiff and Brian, to recreation.  (*Id*. at 5.)  At some unspecified time prior to the assault, Defendant Jackson "had been made aware by [Plaintiff]" that Brian had threatened Plaintiff with physical harm, but Defendant Jackson failed to protect Plaintiff.  (*Id*.)

As a result of the assault, Plaintiff sustained injuries to his left eye and his ankle.  (*Id*. at 1.)  Plaintiff seeks compensatory and punitive damages as well as costs and fees.  (*Id*. at 10.)

Defendant Jackson moves for summary judgment on the grounds that he was not deliberately indifferent to a substantial risk to Plaintiff's safety and that he is entitled to qualified immunity. (Doc. 80.)

## II. Governing Standards

### A. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and

draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## B. Deliberate Indifference

Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In particular, prison officials have an affirmative duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 832. A prison official's failure to protect an inmate from attacks by other inmates violates the Eighth Amendment only when two elements are met: (1) the objective element, which requires a prisoner to show that the complained of conditions posed a "substantial risk of serious harm"; and (2) the subjective element, which requires a prisoner to show that the defendant was deliberately indifferent to that risk. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)). A prison official is deliberately indifferent "if he knows that inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 844.

Under the objective prong, "[w]hat is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). For a failure to protect claim, the prisoner must show that he was placed into conditions that posed a substantial risk of serious harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). A prisoner need not wait until he is actually assaulted to bring an Eighth Amendment claim, *see Farmer*, 511 U.S. at 845, but "[g]eneral intimidation, harassment, and nonspecific threats . . . do not demonstrate a constitutionally intolerable risk of harm." *Chandler v. Amsberry*, No. 3:08-CV-00962-SI, 2014 WL 1323048, at *7 (D. Or. March 28, 2014) (citing cases).

The subjective prong requires "more than ordinary lack of due care for the prisoner's interest or safety." *Farmer*, 511 U.S. at 835 (quotation omitted). To prove

deliberate indifference, a plaintiff must show that the official knew of and disregarded an excessive risk to inmate safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference. *Id.* at 837. The plaintiff need not show that the defendant acted or failed to act believing that harm would actually befall the inmate. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. To prove knowledge of the risk, the plaintiff may rely on circumstantial evidence. In fact, the very obviousness of the risk may be sufficient to establish knowledge. *Id.*

A plaintiff alleging deliberate indifference must also "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. Cal. Dep't of Corrs. and Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). "The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).

Finally, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Prison officials do not escape liability, however, if the evidence shows that that they "merely refused to verify underlying facts that [they] strongly suspected to be true, or declined to confirm inferences of risk that [they] strongly suspected to exist." *Id.* at 843 n.8.

### III.    Relevant Disputed and Undisputed Facts

Plaintiff was housed at the ASPC-Eyman. (Doc. 81 (Def.'s Statement of Facts) ¶ 1.) Prisoner Brian Wuest was housed in the same pod as Plaintiff, but the two were not cellmates. (*Id*. ¶ 2.) On August 16, 2016, while Defendant Jackson was preparing Plaintiff, Wuest, and some other inmates to leave the pod for recreation Wuest head-butted Plaintiff and then kicked him. (*Id.* ¶ 3; Doc. 86 at 12, Pl.'s Ex. 1 (Gary Garcia

Aff.).)  Wuest attacked Plaintiff suddenly and "[w]ithout a single word."  (Doc. 81-1 at 19 (Pl. Depo. at 45:16).)  Defendant Jackson immediately yelled for them to "[g]et down" and "stop fighting."  (*Id*. at 19–23 (Pl. Depo. at 45:10–12, 46:1–2, 47:6−7, 48:20–25, 49:1–5).)  Defendant Jackson initiated an "ICS" (Incident Command System).  (*Id*. at 22 (Pl. Depo. at 48:3); Doc. 86 at 20 (Pl.'s Ex. 4).)

ADC inmates can request to be placed in protective custody pursuant to the procedures outline in ADC Department Order (DO) 805.  (Doc. 81-4 at 2–24 (Def.'s Ex. 4.)  Plaintiff was aware of the DO 805 process, but he did not submit a DO 805 request with respect to Wuest's threatening behavior prior to the assault.  (Doc. 81 ¶¶ 6–7; Doc. 87 ¶¶ 6−7.)[2]

In his signed Declaration, Defendant Jackson states that the assault "was a surprise to him" and that prior to this incident he was "unware of any specific incidents of violence or threats of violence by Mr. Wuest against Mr. Derello."  (Doc. 81-2 (Jackson Decl.) ¶ 3.)  Defendant Jackson states that he "do[es] not recall having any conversations with Mr. Derello at all about Mr. Wuest" before the assault, and that he did not "hear any racial slurs by Mr. Wuest that were directed at Mr. Derello, or any other verbal hostility by Mr. Wuest that was directed at Mr. Derello."  (*Id*.)  According to Defendant Jackson, because Plaintiff "did not communicate any concerns about his safety" to him, Defendant Jackson "had no facts on which to contact a supervisor or take other appropriate action regarding any conflict between [Plaintiff] and Mr. Wuest."  (*Id. ¶* 4.)

Plaintiff states in his signed Declaration that "Officer Jackson was aware of the problem between Prisoner Wuest and Plaintiff.  He further knew/should have known of the threat of violence by pulling-out so many [p]risoners by himself, in a super-maximum unit."  (Doc. 86 at 10 (Pl.'s Decl. ¶ 3).)  Plaintiff states that Defendant Jackson heard

---

[2] Plaintiff's Controverting Statement of Facts is signed under penalty of perjury pursuant to 28 U.S.C. § 1746.  (*See* Doc. 87 at 1, 3.)  *See* 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4).  Because the Court must construe liberally Plaintiff's filings and motions, Plaintiff's controverting Statement of Facts will be treated as an affidavit in opposition to summary judgment to the extent that Plaintiff's statements are based on his personal knowledge.  *See* 28 U.S.C. § 1746.

Wuest calling Plaintiff's racial slurs, but does not state when this occurred. (*Id.* ¶ 4.) According to Plaintiff, Defendant Jackson "had been made aware by [Plaintiff] on occas[]ions prior to August 16, 2016 that Brian threatened physical harm to [Plaintiff]." (Doc. 87 ¶ 15.) Plaintiff also states, however, that he "never communicated to Officer Jackson that his life or safety was actually in danger from Wuest in specific terms." (*Id.* ¶ 5.)

Plaintiff submitted a Significant Incident Report, describing a September 13, 2015 incident in which inmate Wuest "smashed his television on the cell front and proce[e]ded to grab one of the shards and then barricaded [the cell front] all while refusing verbal directives." (Doc. 86 at 13–17 (Pl.'s Ex. 2).) Chemical agents had to be deployed, and inmate Wuest was restrained and placed on a 10-minute mental health watch. (*Id.*) Defendant Jackson was present during this incident. (*Id.*)

Plaintiff also submitted an August 3, 2016 Inmate Informal Complaint Resolution that he addressed to COIII Reisenbichler complaining about the inmate in "cell # 1-A-24 banging on [the] adjacent vent/wall calling [Plaintiff] the 'N' word over and over again." (*Id.* at 34 (Pl.'s Ex. 5).) Plaintiff also complained that this inmate "purposely blew out the power knowing [Plaintiff] use[s] a CPAP medical device," which placed Plaintiff's life in peril. (*Id.*) Plaintiff stated that even though the staff had witnessed this inmate throw hot water on another inmate, the inmate was not punished. (*Id.*)

## IV. Discussion

### A. Objective Prong

Defendant Jackson does not address the objective prong of the deliberate indifference analysis. Construing the facts in the light most favorable to Plaintiff, the Court will assume that Plaintiff faced an objective risk of serious harm after being threatened with physical harm by inmate Wuest. (Doc. 1 at 4−5.) The deliberate indifference analysis therefore turns on whether Defendant Jackson subjectively disregarded that risk.

/ / /

## B. Subjective Prong

Defendant Jackson has set forth sufficient facts to carry his initial burden of showing that he was neither aware of nor deliberately indifferent to a substantial risk of serious harm to Plaintiff. The undisputed evidence shows that inmate Wuest's assault on Plaintiff was sudden and that Defendant Jackson immediately ended the assault by ordering both Wuest and Plaintiff to get on the ground and initiating an ICS. (Doc. 81-1 at 19–23 (Pl. Depo. at 45:10–12, 16, 46:1–2, 47:6−7, 48:20–25, 49:1–5, 48:3); Doc. 86 at 20 (Pl.'s Ex. 4).) Further, Plaintiff admits that he "never communicated to Officer Jackson that his life or safety was actually in danger from Wuest in specific terms." (Doc. 87 ¶ 5.)

Plaintiff points to evidence that Defendant Jackson was present during the September 2015 incident where Wuest barricaded himself in his cell. (Doc. 86 at 13−17 (Pl.'s Ex. 2).) But this evidence of Wuest's disruptive behavior is too attenuated by time and kind to establish that Defendant was aware of a substantial risk of harm to Plaintiff. The incident took place approximately nine months before Plaintiff was transferred into the pod with Wuest and nearly one year before Wuest assaulted Plaintiff, and does not appear to have been an assault on another inmate.

Plaintiff's Inmate Informal Complaint Resolution, submitted approximately two weeks before the assault, was also insufficient to make Defendant Jackson aware of a possible threat. The complaint was not addressed to Defendant Jackson, and there is no evidence that Defendant Jackson ever saw the complaint. Also, Plaintiff never sought protective custody under DO 805 based on Wuest's threatening behavior prior to the assault. (Doc. 81 ¶¶ 6–7; Doc. 87 ¶¶ 6−7.) Based on the undisputed evidence, Defendant Jackson had no basis from which to infer that Plaintiff faced a substantial threat of serious harm.

Plaintiff states that he had made Defendant Jackson "aware . . . on occas[]ions prior to August 16, 2016" that inmate Wuest had threatened him with physical harm. (Doc. 87 ¶ 15.) Even if this is true, absent additional facts about when these

conversations between Plaintiff and Defendant Jackson took place and what specific information Plaintiff conveyed to Defendant Jackson, Plaintiff's statement is too vague to create a genuine issue of material fact that Defendant Jackson knew of and deliberately disregarded a substantial risk of serious harm to Plaintiff. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted) (deliberate indifference "does not require that the [prison] official believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault," but it does require that the official "have more than a mere suspicion that the attack will occur"). As noted previously, Plaintiff concedes that he did not inform Defendant Jackson "in specific terms" that his life and/or safety were at risk. (*Id.* ¶ 5.)

Plaintiff also states that Defendant Jackson heard Wuest using racial slurs against him. (Doc. 86 at 10 (Pl.'s Decl. ¶ 4).) Although this behavior is highly offensive, it was not sufficient to make Defendant Jackson aware of a substantial risk to Plaintiff's safety. Nor has Plaintiff pointed to any record evidence to support his conclusory argument that Defendant Jackson "knew/should have known of the threat of violence by pulling-out so many [p]risoners by himself, in a super-maximum unit." (Doc. 86 at 10 (Pl.'s Decl. ¶ 3).)

Plaintiff has failed to produce evidence from which a reasonable jury could find that Defendant Jackson knew of and deliberately disregarded a substantial threat of serious harm to Plaintiff. Accordingly, Plaintiff's Eighth Amendment claim fails, and summary judgment will be granted in favor of Defendant Jackson.[3]

## V. Plaintiff's Motion for Reconsideration

On May 10, 2018, the Court issued an Order denying Plaintiff's Motion for Leave to File Sur-Reply. (Docs. 90, 92.) In denying Plaintiff's motion, the Court determined that Plaintiff had not been prejudiced by Defendant Jackson's untimely filing of his reply brief in support of summary judgment, that a sur-reply would not be necessary, and

---

[3] Because the Court has determined that there was no constitutional violation, it will not address Defendant Jackson's qualified immunity argument.

accepted Defendant Jackson's reply as timely. (Doc. 92.) Plaintiff now asks the Court to reconsider its decision. (Doc. 93.)

Motions for reconsideration should be granted only in rare circumstances. *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). A motion for reconsideration is appropriate where the district court " (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988). A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Nor may a motion for reconsideration repeat any argument previously made in support of or in opposition to a motion. *Motorola, Inc. v. J.B. Rodgers Mech. Contractors, Inc.*, 215 F.R.D. 581, 586 (D. Ariz. 2003).

In his Motion for Reconsideration, Plaintiff argues that he "feel[s] prejudiced by the Defendant's reply" because the Court has not addressed Plaintiff's "missing legal property." (Doc. 93 at 1.) Plaintiff does not specify what legal property he is missing or explain its relevance to his claim against Defendant Jackson. (*See* Docs. 90, 91, 93.) The Court has reviewed Plaintiff's Motion for Leave to File Sur-Reply, Lodged Proposed Sur-Reply, and his Motion for Reconsideration, and finds that Plaintiff has failed to show that reconsideration of the May 10, 2018 Order is warranted due to newly discovered evidence, clear error, or an intervening change in controlling law. Accordingly, Plaintiff's Motion for Reconsideration will be denied.

/ / /

/ / /

/ / /

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is withdrawn as to Defendant Jackson's Motion for Summary Judgment (Doc. 80) and Plaintiff's Motion for Reconsideration (Doc. 93).

(2)    Plaintiff's Motion for Reconsideration (Doc. 93) is **denied**.

(3)    Defendant Jackson's Motion for Summary Judgment (Doc. 80) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 9th day of August, 2018.


David G. Campbell
Senior United States District Judge